PATRICK R. DELAHUNTY (SBN 257439)
pdelahunty@delawllp.com
WILLIAM J. EDELMAN (SBN 285177)
wedelman@delawllp.com
DELAHUNTY & EDELMAN LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone:   415-891-6210
Facsimile:    415-891-6256

*Attorneys for Defendant*
*Joseph Huffaker*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No: 3:21-CR-00374-MMC |
| Plaintiff, | |
| vs. | **MOTION TO SUPPRESS OUT OF COURT IDENTIFICATIONS AND DERIVATIVE IN-COURT IDENTIFICATIONS** |
| JOSEPH HUFFAKER, | |
| Defendant. | |

Defendant, Joseph Huffaker ("Huffaker"), through his counsel William J. Edelman, moves to suppress out-of-court identifications based on photo presentations to witnesses other than co-Defendant Brendan Tatum ("Tatum") on the grounds that the procedures used in the identifications were impermissibly suggestive and unreliable in violation of Huffaker's due process rights under the Fourteenth Amendment. *E.g.*, *United States v. Montgomery*, 150 F.3d 983, 992 (9th Cir. 1998).

I.   BACKGROUND

Huffaker is charged in a Superseding Indictment (ECF No. 108.)  This case involves allegations that, in 2017, police officers with the Rohnert Park Department of Public Safety

(RPDPS) extorted motorists by pulling them over under the guise of official authority, and then stole money and/or marijuana from the motorists after threatening them with arrest. *Id.* In addition, the operative indictment alleges that the officers conspired to and did falsify records related to the stop(s) after a federal investigation had started, falsely identified themselves as federal agents during at least one stop, and conspired to engage all of those crimes. *Id.*

The gist of the government's case is that the co-defendant who has already pled guilty and is awaiting sentencing (Brendan Tatum) – a supervisor at RPDPS at the time of the alleged crimes -- orchestrated the extortion scheme, while the defendant here (Huffaker) was a line-level officer involved in a very small number of Tatum's admittedly prodigious extortionate traffic stops. No other officers have been charged by the government besides supervisor Tatum and Huffaker.[1] In sum, despite Tatum's admittedly extensive criminal conduct stretching over three years and supposedly involving at least three subordinate officers, this case now involves only Huffaker and his supposed role in two traffic stops (and conduct related to those stops) over a two-week period in December 2017.  The two traffic stops at issued allegedly occurred on (i) December 5, 2017, and (ii) December 18, 2017.

The government's theory is that Huffaker was present at both traffic stops and engaged in conduct consistent with the alleged extortion scheme.  The government's evidence that Huffaker was present at those stops, however, boils down to (i) potential testimony from Tatum, who has pled guilty, and (ii) alarmingly late, sloppy, poorly documented, and facially improper photographic identification procedures involving witnesses at the two stops. Huffaker is not at this time seeking to suppress any testimony from Tatum.  Rather, Huffaker moves to suppress the improper, suggestive, and unreliable identifications made by other witnesses.

---

[1] The Superseding Indictment specifically includes counts for (1) conspiracy to commit extortion under official right (December 5-18, 2017), 18 U.S.C. § 1951; (2) extortion under official right regarding a December 5, 2017 traffic stop, 18 U.S.C. §§ 1951, 2; (3) extortion under official right regarding a December 18, 2017 traffic stop, 18 U.S.C. §§ 1951; (4) conspiracy to falsify records regarding the two December 2017 traffic stops, 18 U.S.C. § 371; (5) falsifying records regarding a December 2017 traffic stop, 18 U.S.C. §§ 1519, 2; (6) conspiracy to impersonate a federal officer on the December 5 and 18, 2017 traffic stops, 18 U.S.C. § 371); (7) impersonating a federal officer on the December 18, 2017 traffic stop, 18 U.S.C. §§ 912, 2.

II.     LEGAL STANDARD

Suggestive pretrial identification procedures may be so impermissibly suggestive as to taint subsequent in-court identifications and thereby deny a defendant due process of law. *United States v. Love,* 746 F.2d at 478. To determine whether a challenged identification procedure is so impermissibly suggestive as to give rise to a substantial likelihood of mistaken identification, the court must examine the totality of the surrounding circumstances. *See Simmons v. United States,* 390 U.S. 377, 384, (1968) (photographic array); *Stovall v. Denno,* 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972, (1967) (one-on-one confrontation); *United States v. Love,* 746 F.2d at 478–79 (photographic array); *United States v. Kessler,* 692 F.2d 584, 585 (9th Cir.1982) (one-on-one confrontation). An identification procedure is suggestive when it "emphasize[s] the focus upon a single individual" thereby increasing the likelihood of misidentification. *United States v. Montgomery*, 150 F.3d 983, 992 (9th Cir. 1998). "The Due Process Clause requires courts to assess, on a case-by-case basis, whether improper police conduct created a 'substantial likelihood of misidentification. Reliability[of the eyewitness identification is the linchpin' of that evaluation. *United States v. Moss*, No. CR 13-0790 PJH, 2014 WL 1349494, at *1 (N.D. Cal. Apr. 4, 2014) (internal quotation marks and citations omitted).

III.    ARGUMENT

A.      December 5, 2017 Stop: Witness E.F..

The critical evidence identifying Huffaker as being present at the December 5, 2017 traffic stop is a witness identification made by alleged victim E.F.  That identification is based on photographs presented to E.F. by the FBI on or about May 8, 2019.  To be clear, that "identification" occurred <u>17 months</u> after the alleged December 2017 stop.  *See* Decl. of William J. Edelman ("Edelman Decl."), Ex. 1.[2]

During that identification "procedure," an FBI Agent showed E.F. only four photographs. *See* Edelman Decl., Ex. 2.  The FBI report memorializing this "procedure" is devoid of what should be routine statements regarding proper photograph-based identifications. For example, the report memorializes no admonishments given to E.F. about the dangers of mis-identifying a

MOT. TO SUPPRESS IDENTIFICATIONS – Page 3
Case No. 3:21-CR-00374-MMC

witness, nor discouraging a witness from picking a photograph in the absence of confidence.  In addition, the report does not even attempt to suggest that an effort was made to select photographs of individuals who looked basically similar.  Indeed, the report does not describe at all the how the photographs were presented, nor any details at all about statements made to the witness before and while the witness was looking at the photos, nor verbatim accounts of E.F.'s reactions and statements about the photographs.

The (only) four photos presented are not similar. *Id.*  Three of the individuals appear to be white (#1-#3), while the fourth is darker skinned of an unknown race.  Two are bald or have a shaved head (#3-#4), while one has very short-cropped hair (#2) and the other (Huffaker, #1) is the only individual with a longer hairstyle.  In terms of facial hair, all of the individuals besides Huffaker (i.e., #2-4) have what could be described as stubble or very-closely-shaved facial hair.  By contrast, Huffaker is the only person presented with a full beard and mustache. *Id.*

Worse, other circumstances cast extreme doubt on the reliability of the stale identification. According to the (admittedly confusing) FBI report documenting this May 2019 "identification" by E.F. of the two officers present at the December 5, 2017 traffic stop, E.F. stated that: (i) one of the two officers present was the then-Chief of the Hopland Police Department (S.H:), who was not even presented as part of the photo lineup; (ii) Huffaker was the other officer present; (iii) the officer who E.F. believed was the Hopland Chief also looked similar to one of the people in the photographs (Snodgrass); and (iv) E.F. knew the name of another officer in a photograph (Tatum) because of E.F.'s extensive investigation and research into the case, but E.F. did not believe that Tatum was present at the stop.  The last point is critical, because it underscores that by the time the FBI conducted this photo lineup 17 months later, press stories that E.F. was closely following had already been published mentioning Huffaker by name (Edelman Decl. Ex. 3) as someone potentially linked to the stop because his name appeared in associated records.  Worse, E.F. had already filed a civil lawsuit in March 2019 naming Huffaker as a defendant present at the December 5 stop (Edelman Decl., Ex. 4).  In sum, this "identification" was no investigative procedure at all, but a biased affirmation of a conclusion already expressed by E.F. based on extensive, unclear investigation with unknown

1  biases.

2  **B.     December 18, 2017 Stop: Witness CHP Officer Simas**

According to the government, the second stop involved a victim B.L. who was stopped by Huffaker and Tatum. Aside from potentially testimony from Tatum (who has pled guilty), the evidence placing Huffaker at the scene was an identification by CHP Officer (Simas) who happened upon the traffic stop and stopped to "back-up" the officers already on the stop. CHP Officer Simar was presented with a set of five photographs <u>three and a half years</u> after the December 18, 2017 stop. Edelman Decl., Ex. 5.

This identification "procedure" was no procedure at all and, similar to the previous "identification," lacked all of the extraordinarily common procedural safeguards accompanying photographic identifications. Rather, an FBI agent simply emailed CHP Officer Simas and attached five photographs. Edelman Decl., Ex. 5. As with the previous "identification," the FBI report details no standard admonishments about the significance of identifying a suspect, and no discussion about how the photographs were selected. Huffaker stands out in the photographs, as he is the only individual with any facial hair at all -- and the only individual with hair that is not very short. Edelman Decl., Ex 5.

In addition, the surrounding circumstances suggest no reliability in the identification. CHP Officer Simas's response to the photos is memorialized in an email, where Simas acknowledges that he has seen press and photographs about Huffaker prior to viewing the photos. Similarly, Simas was working with a CHP Trainee (Baker), who did not identify Huffaker as being present. Edelman Decl., Ex. 6. The government has not produced any evidence that the alleged victim of the stop identified Huffaker as being present at the stop.

**IV.   CONCLUSION**

For the reasons stated above, the non-Tatum identifications of Huffaker should be suppressed as well as any derivative in-court identifications.

//

//

| | | |
|---|---|---|
| DATED: April 29, 2024 | By: | _/s/ William J. Edelman_ |
| | | WILLIAM J. EDELMAN |
| | | *Attorney for Defendant Joseph Huffaker* |